**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY



**FILED**
JAMES J. WALDRON, CLERK

February 5, 2007

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy

|  |  |
|---|---|
| _____ : |  |
| IN RE: : | CHAPTER 13 |
| : |  |
| PAZZO PAZZO, INC., : |  |
| : | CASE NO:    02-35976 (NLW) |
| : |  |
| Debtor. : | Chapter 11 |
| _____: |  |
| : |  |
| Pazzo Pazzo, Inc., : | Adv. No.:    06-1022 |
| : |  |
| Plaintiff, : |  |
| v. : | **OPINION** |
| : |  |
| State of New Jersey, : |  |
| : |  |
| Defendant. : |  |
| _____: |  |

**Before:    HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Morris S. Bauer, Esq.
Ravin Greenberg, PC
101 Eisenhower Parkway
Roseland, New Jersey 07068
Attorney for PAZZO PAZZO, INC.

Stephen J. Mogila, Esq.
Deputy Attorney General
State of New Jersey
Department of Law and Public Safety, Division of Law
25 Market Street
PO Box 106
Trenton, New Jersey 08625-0106
Attorney for State of New Jersey

This matter is before the Court on a motion by the plaintiff, Pazzo Pazzo, Inc. ("Pazzo" and/or "Debtor") to reconsider this Court's Order dated February 8, 2006 (the "Dismissal Order") dismissing Pazzo's adversary complaint ("Reconsideration Motion").  As set forth at greater length below, the Court denies the Debtor's Reconsideration Motion in its entirety.

## JURISDICTION

This Court has jurisdiction to review and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  The following constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS AND PROCEDURAL HISTORY

On  January 10, 2006, Pazzo commenced an adversary proceeding by filing a complaint against the State Of New Jersey, Division of Taxation. (the "Division").  Pazzo seeks an order (i) compelling the Division to comply with the terms of the Debtor's confirmed Second Modified Plan of Reorganization (the "Second Plan") and (ii) compelling the Division to release its liens against the Debtor's principal, Lawrence S. Berger ("Mr. Berger").[1] The complaint was apparently precipitated by the fact that in May, 2005 the Division filed two Certificates of Debt against Mr. Berger as a responsible officer of Pazzo.  The Certificate of Debt in the amount of $26,688.92, designated as DJ-126,805-05 was based on Pazzo's liability for Gross Income Tax-Employer Withholding Taxes ("GIT-ER") and Sales and Use Taxes ("SUT") for the second quarter of 2002.  The Certificate of Debt in the amount of $105,675.73, designated as DJ-126,806-05, was for GIT-ER for fourth quarter of 2001 and first quarter

---

[1]The Debtor filed its Chapter 11 petition on May 31, 2202, and thereafter continued in possession of its property and management of its financial affairs.

2002, and SUT for the third and the fourth quarters of 2001 and first quarter of 2002.[2]

Disputes between Pazzo and the Division have a long history.  Apparently Pazzo had accrued significant tax liabilities to the State of New Jersey by the time that Pazzo filed its Chapter 11 case.  The Division timely filed a secured proof of claim in the amount of $127,932.83, and a priority proof of claim in the amount of $115,123.23.  Additionally, the Division filed an administrative expense  claim for nonpayment of post-petition taxes in the amount of $22,107.10.  The Division's administrative expense claim was subsequently amended to the amount of $259,889.58.

Prior to the confirmation hearing on the Debtor's First Amended Plan,  the Division filed objections that argued that (i) the plan failed to address the Division's secured claim; (ii) the plan failed to specify that the Division retained a lien on Pazzo's property; (iii) the plan failed to provide for payment of its administrative expense claim; and (iv) the plan failed to address Pazzo's unfiled tax returns. (the "Division's Objections").  Subsequently, Pazzo filed a Second Amended Plan of Reorganization ("Second Amended Plan") which modified various plan provisions in order  to meet the Division's Objections.

The Division was not the only taxing authority that objected to the manner in which its claims were treated in the First Amended Plan.  The Internal Revenue Service ("IRS") also objected to Pazzo's First Amended Plan.  It objected to language in the First Amended Plan that  provided that the Debtor's insiders were released from "any causes of action by the Debtor, its creditors and other parties in interest upon the payment by the insiders of the Debtor's professional fees in connection with this bankruptcy." ("Release Provision")(First Amended Plan, p. 17).  The IRS contended that the release was overly broad.[3]

The Second Amended Plan contained modifications to meet the IRS objections regarding Pazzo's proposed treatment of its claims.  Additionally, to meet the IRS objection that the release language in the Plan was overly-

---

[2]Under N.J.S.A. 54:23B-14 and N.J.S.A. 54A-1-1 et seq., a responsible person or officer is liable for unpaid SUT and GIT-ER.

[3]The Division's Objections did not address this Release Provision.

4

broad, Pazzo modified the provision to read as follows:

> The Plan releases all insiders from any causes of action by the Debtor, its creditors and other parties in interest upon the payment by the insiders of the Debtor's professional fees in connection with this bankruptcy. The release set forth herein shall be self executing and shall become effective without the need for any further document or Court Order. Notwithstanding the release provided herein, no insider or other Persons shall be released from any obligations that may be due and owing thereby to the IRS as a result of the IRS's claims against the Debtor; provided, however, so long as the Debtor is in substantial compliance with the payment terms to the IRS as set forth herein, the IRS shall be enjoined from pursuing any insider or Persons for payment of its pre-petition claims against the Debtor.

Second Modified Plan, p. 18.

Presumably because the Division did not object to the Release Provision, the Division was not included in the revised Release Provision quoted above.

At the confirmation hearing Pazzo's counsel and counsel for the Division announced the final terms of their agreement regarding treatment of the Division's claims. On July 20, 2004, the Court entered an order confirming the Debtor's Second Modified Plan. ("Confirmation Order"). The Confirmation Order specifically approved the agreement between the Debtor and the Division. See Order Confirming Second Modified Plan of Reorganization, ¶ 6, p.13. The Confirmation Order also contains an explicit finding by the Court that the Release Provision was appropriate and essential to confirmation of the Plan. Id. at ¶ 0, p. 8.

Approximately ten months later, on May 19, 2005, the Division filed the two Certificates of Debt against Mr. Berger as a responsible principal of the Debtor. On July 28, 2005, Mr. Berger filed a complaint in Tax Court challenging the State's final determination and the Certificates of Debt. The complaint sought a temporary restraining order against the Division to prevent it from recovering payment from Mr. Berger. On September 22, 2005, Justice Joseph C. Small of the Tax Court denied the entry of any temporary restraints.

Approximately three months later, Pazzo filed the instant Complaint against the Division.

Contemporaneously with the filing of its complaint, Pazzo moved by order to show cause to require

the Division to show: (i) why an order should not be entered compelling the Division to comply with

the terms of the Second Amended Plan; (ii) why the Division should not be held in contempt of

court; and (iii) why an evidentiary hearing should not be scheduled to determine the extent of

damages caused to the Debtor by the Division's alleged wilful and intentional violation of the

Confirmation Order. ("Order to Show Cause").

The Division filed its answer on January 30, 2006, and a hearing was held on February 6,

2006, regarding Pazzo's Order to Show Cause. After considering the arguments of the parties, an

Order was entered on February 8, 2006 dismissing the complaint.  The Court determined that the

Division did not consent to the Release Provision because under prevailing law interpreting the Tax

Injunction Act, the Division could not have consented. Further, the Court determined that Pazzo's

adversary proceeding was barred by the Tax Injunction Act.   Pazzo thereafter moved for

reconsideration.

## DISCUSSION

### 1.    Basis for Motion to Reconsider

Pazzo moved for reconsideration based on Federal Rules of Bankruptcy Procedure 9023 and

9024, which make Federal Rules of Civil Procedure 59 and 60 applicable to bankruptcy cases.[4]

Pazzo particularly noted that Rule 60(b) provides inter alia, for "relief from a final judgment, order

or proceeding for the following reasons: 1) mistake, inadvertence, surprise, or excusable neglect;

---

[4]In this opinion the Federal Rules of Bankruptcy Procedure shall be referred to as the
"Bankruptcy Rule(s)", and the Federal Rules of Civil Procedure shall be referred to as the
"Rule(s)."

6

... 3) fraud, misrepresentation or other misconduct of an adverse party; ... or 6) any other reason justifying relief from operations of the judgment." Pazzo does not explain its use of both Rule 59 and 60(b) as a basis for reconsideration. Because it cited to specific subsections within Rule 60(b) the Court presumes that Pazzo is primarily relying on these provisions of 60(b) to provide the basis for the Court to undo its error. The error committed by the Court appears to be its failure to recognize that the Tax Injunction Act does not bar the Court from enforcing the non-debtor release contained in Pazzo's Second Amended Plan.

In support of its effort to enjoin the Division from acting against Mr. Berger, Pazzo argued simply that the filing of Certificates of Debt against Mr. Berger was in violation of the Release Provision contained in Pazzo's confirmed plan. Pazzo maintained that the Division should be compelled to vacate the Certificates of Debt because the doctrine of res judicata barred the Division from contesting the Plan terms. In its opposition to Pazzo's request for an injunction, the Division argued that injunctive relief was barred by the Tax Injunction Act, principles of comity, and 11 U.S.C. § 524(e). Without reaching the other grounds cited by the Division, this Court agreed that the Tax Injunction Act precluded the injunction sought by Pazzo, and dismissed the adversary proceeding. Pazzo now grounds its motion for reconsideration on the following: (i) the injunctive relief it requests falls within the bankruptcy exception to the Tax Injunction Act; (ii) the authority relied upon by this Court is inapplicable; (iii) the non-debtor releases contained in Pazzo's Second Amended Plan are outside the scope of the Tax Injunction Act; (iv) the Division consented to the release; and (v) the doctrine of equitable mootness bars the Division from pursuing Mr. Berger.

It is well recognized that "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986). Both the District Court and the Bankruptcy

7

Court have promulgated local practice rules which address motions for reconsideration and provide that such motions (i) must be filed within 10 business days after entry of the order or judgment, and (ii) must be supported by a brief concisely setting forth the matter or controlling decisions overlooked by the Court that warrant reconsideration.  District Court L. Civ. R. 7.1(i) and D.N.J. LBR 9013-1(h).[5]   In applying these rules,  a court should grant reconsideration where a moving party demonstrates at least one of three grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion... or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, et al., 176 F. 3d 669, 677 (3d Cir. 1999); North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

However, a motion for reconsideration is not an appeal.  The moving party must demonstrate "more than a disagreement with the Court's decision." Database America, Inc. v. Bellsouth Adver. & Publ'g Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993).  It is not appropriate to use a motion for reconsideration as a vehicle to rehash the arguments that the Court considered in reaching its decision.  Interfaith Community Org. v. Honeywell Int'l, Inc., 215 F.Supp. 2d 482, 507 (D.N.J. 2002); Oritani Savings and Loan Ass'n v. Fidelity Deposit Co. of Md., 744 F. Supp. 1311, 1314 (D.N.J. 1990).  Additionally, a motion for reconsideration "should not be used as a means to argue new facts or issues that inexcusably were not presented to the Court in the matter previously decided." Brambles USA, Inc. v. Blocker, 735 F.Supp. 1239, 1240 (D. Del. 1990).

A court should "only entertain a motion to reconsider, if the alleged overlooked controlling decision of law or dispositive factual matter was of a nature that, if considered by the Court, might

---

[5]D.N.J. LBR 1001-1(a) provides that the Local Civil Rules of the United States District Court for the District of New Jersey shall be followed insofar as they are not inconsistent with the Bankruptcy Code.

8

reasonably have resulted in a different conclusion." <u>Davis v. Spirit of New Jersey</u>, 2000 WL

33302241, *2 (D.N.J. 2000).  Nonetheless, "[i]n exercising its discretion in ruling on a motion for

reargument or reconsideration, the Court must keep an open mind... the Court should not hesitate

to grant the motion when compelled to prevent manifest injustice or to correct clear legal error."

<u>Brambles</u>, 735 F. Supp. at 1241.

  After reviewing the arguments presented in the course of Pazzo's Order to Show Cause

hearing and the authority now presented in the motion for reconsideration, this Court finds that the

motion for reconsideration must be denied.  As explained in greater detail below, the reconsideration

motion is largely a repetition of the matters heard in connection with Pazzo's request for injunctive

relief.  Moreover, to the extent that Pazzo now raises new legal arguments, such as the equitable

mootness doctrine, the Court declines to consider them since Pazzo could have easily raised such

arguments in the earlier hearing.

  Examination of Pazzo's reconsideration motion solely under Civil Procedure Rule 60(b)

rather than under Rule 59 and this District's local practice rules does not alter the Court's decision.

First, there is considerable disagreement among courts as to whether Rule 60(b)(1) should be used

to correct errors in a court's legal reasoning.  <u>Center for Nuclear Responsibility, Inc. v. U.S. Nuclear</u>

<u>Regulatory Com'n</u>, 781 F. 2d 935, 939-940 (CA.D.C. 1986)(discussing the divergent views).

Second, though the Third Circuit has yet to specifically rule on applicability of Rule 60(b)(1), it has

long held that the Rule 60(b)(6) is not a substitute for an appeal.  <u>Martinez-McBean v. Government</u>

<u>of the Virgin Islands</u>, 562 F. 2d 908, 911 (3d Cir. 1997)("... it is improper to grant relief under Rule

60(b)(6) if the aggrieved party could have reasonably sought the same relief by means of an

appeal.").  Therefore, the Court does not find it appropriate to consider Pazzo's motion under Rule

60(b)(6).  Moreover, in this case, not only could Pazzo have filed a appeal, but its motion for

9

reconsideration is timely under Bankruptcy Rule 9023, and there is no need to employ Bankruptcy

Rule 9024 and Rule 60.

Finally, the discussion in <u>Smith v. Evans, et al.</u>, 853 F.2d 155, 158-159 (3d Cir. 1988) leads

this Court to conclude that Rule 60(b)(1) is not applicable to the motion before this Court.  In <u>Smith</u>

<u>v. Evans</u> the Court considered whether a motion denominated as one under Rule 59, but not timely

brought, could be considered under Rule 60(b)(1).  853 F.2d at 158.  It observed that "the function

of the motion, not the caption, dictates which Rule applies."  <u>Id</u>.  After examining the motion, the

Court determined that the motion served the function of a Rule 59 motion because "[t]he purpose

of the motion is to 'relitigate the original issue'; the motion alleges no more than legal error and

merely reiterates the arguments contained in the complaint."  <u>Id</u>. at 159.  Like the motion at issue

in <u>Smith v. Evans</u>, Pazzo's motion merely reargues the legal issue raised at the hearing on its Order

to Show Cause.  Accordingly, this Court does not find it appropriate to consider Pazzo's motion

under Rule 60(b)(1).  As to Rule 60(b)(3), Pazzo merely alludes to it, and provides no foundation

for the Court to consider whether fraud, misrepresentation or misconduct existed.  Accordingly, it

is not appropriate for the Court to speculate about the possible applicability of Rule 60(b)(3).


### 2.      <u>Tax Injunction Act</u>

The Tax Injunction Act is straightforward, and by its language identifies the lack of an

adequate state law remedy as the single exception to its reach.  The statute provides that:

> the district courts shall not enjoin, suspend or restrain the assessment,
> levy or collection of any tax under State law where a plain, speedy
> and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341.

It has been observed that the principal purpose of the Tax Injunction Act is "to limit drastically

federal court jurisdiction to interfere with so important a local concern as the collection of taxes." Rosewell v. LaSalle National Bank, 450 U.S. 503, 522 (1981). The United States Supreme Court has stated that the Tax Injunction Act is interpreted and applied as a "jurisdictional rule" and a "broad jurisdictional barrier." Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 470 (1976); See also, Robinson Protective Alarm Co. v. City of Philadelphia, 581 F.2d 371, 375 (3d Cir. 1978)(Tax Injunction Act is strictly a jurisdictional provision that withholds from federal courts their power to adjudicate certain controversies).

Judicially created or recognized exceptions to the Tax Injunction Act are few, but "[i]t is well established ... that the Tax Injunction Act does not prevent a Bankruptcy Court from enforcing the provisions of the Bankruptcy Code that affect the collection of state taxes." In re Hechinger Investment Co., 335 F.3d 243, 247, n.1 (3d Cir. 2003). For example, in Adams v. Indiana, 795 F.2d 27, 29 (7th Cir. 1986) the Court found that § 362(a)(6) prevents a state from attempting to collect prepetition taxes while a bankruptcy case is pending.

It is this bankruptcy exception on which Pazzo rests its argument that this court incorrectly determined that the Tax Injunction Act precluded Pazzo from enjoining the Division's collection efforts against Mr. Berger, a nondebtor. Pazzo's legal position is not entirely without support as there is conflicting authority on the issue of the bankruptcy court's jurisdiction to enjoin the collection of taxes. In Bostwick v. United States, 521 F.2d 741, 744 (8th Cir. 1975) the court held that the bankruptcy court had the power to enjoin assessments and collection of taxes by the Internal Revenue Service ("IRS") "in order to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner and fulfill the ultimate policy of the Bankruptcy Act." At issue in Bostwick was a dispute regarding the dischargeability of Bostwick's tax debt under § 2(a)(2A) of

the Bankruptcy Act.[6]  The Eighth Circuit affirmed the bankruptcy referee's injunction staying collection activity pending determination of the dischargeability issue.

Relying in part on Bostwick, the bankruptcy court in In re Major Dynamics, Inc., 14 B.R. 969 (S.D. Cal. 1981) granted the Creditors' Committee motion for a temporary stay of the IRS' collection actions against certain of the debtor's unsecured creditors.  The Court concluded that it had jurisdiction to act so long as "the IRS activity to be enjoined directly affected the debtor or the estate, and that the exercise of such jurisdiction was necessary to the rehabilitation of the debtor or the orderly and efficient administration of the debtor's estate." 14 B.R. at 972.  Also underpinning its decision was the court's conclusion that 11 U.S.C. § 505 was not limited solely to determining the tax liability of the debtor.  Id.  See also, In re H&R Ice Co., Inc., 24 B.R. 28 (Bankr. W.D. Mo. 1982); In re J.K. Printing Services, Inc., 49 B.R. 798 (Bankr. W.D. Va. 1985).  However, as will be discussed more fully infra, the majority of decisions hold that the bankruptcy court lacks jurisdiction to enjoin taxing authorities from assessing or collecting responsible officer taxes from non-debtor principals.  See, e.g., Matter of East Wind Industries, 61 B.R. 408 (D.N.J. 1986); In re Educators Inv. Corp., 59 B.R. 910 (Bankr. D. Nev. 1986); Cambridge Machined Products Corp. v. United States, 58 B.R. 22 (Bankr. D. Mass. 1985); In re Steel Products, Inc., 53 B.R. 999 (W.D. Wash. 1985).

Nontheless,  Pazzo argues that the recent case,  In re James Ellet, 254 F.3d 1135 (9th Cir. 2001), demonstrates that enjoining a state taxing authority from attempting to collect discharged tax obligations is not prohibited by the Tax Injunction Act.  A careful reading of Ellet reveals that its holding does not support Pazzo's effort to enjoin the Division.  Rather, the decision in Ellet simply

---

[6]Section 505 replaced Section 2a(2A) in the Bankruptcy Act of 1978.  Quattrone Accountants, Inc. v. Internal Revenue Service, 895 F.2d 921 (3r. Cir. 1990).

falls well within the bankruptcy exception recognized in <u>Hechinger</u>.   In <u>Ellett</u> the debtor brought

an adversary proceeding for declaratory and injunctive relief barring collection of his prepetition

state income taxes.   254 F.3d at 1137.   Ellett had scheduled the Franchise Tax Board of California

("FTB") as an unsecured creditor with a claim for $18,000.   <u>Id</u>.   The FTB did not file a proof of

claim or otherwise participate in the bankruptcy case.   <u>Id</u>.   Because the FTB did not file a claim, it

did not receive any distributions under Ellett's Chapter 13 plan.   <u>Id</u>.   After the plan was completed

and Ellett received his discharge, the FTB sent Ellett a demand for payment of the prepetition taxes.

<u>Id</u>.   Ellett asserted that the FTB could not continue collection actions because the FTB debt was

discharged.   <u>Id</u>.

　　　　The head of the FTB moved to dismiss the adversary proceeding on various grounds,

including the Tax Injunction Act.   The Ninth Circuit determined that the Bankruptcy Code "contains

a detailed scheme relating to a debtor's state and federal tax obligations," and  further concurred

with other courts that the general provisions of the Tax Injunction Act do not defeat specific

Bankruptcy Code provisions.   <u>Id</u>. at 1147-1148.   Accordingly, it concluded that Code § 524 gives

bankruptcy courts the power to enjoin the collection of certain state tax obligations, not withstanding

the Tax Injunction Act.   <u>Id</u>. at 1149.   Thus, it found the injunctive relief sought by Ellett in his

adversary proceeding to be redundant of the injunction contained in Code § 524.   <u>Id</u>.

　　　　It is important to note that <u>Ellett</u> dealt only with Code § 524 and its effect of enjoining the

FTB from collecting the <u>debtor's</u> discharged tax obligation.   The Ninth Circuit in <u>Ellett</u> did not

address the employment of the bankruptcy court's general equity powers to enjoin taxing authorities

from proceeding against nondebtors.   In fact, the Court in <u>Ellett</u> specifically cautioned that:

> Of course, to the extent that a bankruptcy court seeks to enjoin the
> collection of state taxes without relying on the specific authorization
> provided by § 524-for example, by attempting to enjoin a state's tax

13

> collection efforts against a non-debtor-the court may be subject to the
> full force of the Act.

Id., n. 7, p. 1149.

Thus, it is readily apparent that Ellett does not support Pazzo's argument that the Division can be

enjoined by the bankruptcy court from proceeding against Mr. Berger, a nondebtor.

In fact, there is no circuit level opinion that supports Pazzo's position.  In a case with some

factual similarities to Pazzo's, the Ninth Circuit held that a bankruptcy court was precluded by the

Anti-Injunction Act from enjoining the IRS from collecting the responsible officer penalty from the

debtor's officer.  In re American Bicycle Ass'n, 895 F.2d 1277 (9th Cir. 1990).[7]  That matter

involved a confirmed corporate Chapter 11 in which the plan provided for full  payment of federal

taxes. There was no indication that the debtor had failed to make any plan payments.  The debtor

and its principal sought to enjoin the IRS from proceeding against the principal on the grounds  that

the IRS' collection of the "responsible officer 100% penalty" would impair the principal's ability

to make the capital contributions required to fund the confirmed debtor's plan.  895 F.2d at 1278.

The Ninth Circuit rejected the debtor's contention that  reorganization in Chapter 11

overrides the purpose of the Anti-Injunction Act.  It stated that nothing in the Bankruptcy Code or

its legislative history "indicates that Congress intended to override the Anti-Injunction Act in these

circumstances."  Id. at 1279 (citing to Matter of La Salle Rolling Mills, Inc., 832 F.2d 390, 394 (7th

Cir. 1987)).  It further explained that

> Only section 105(a) of the Bankruptcy Code might arguably give a
> bankruptcy court power to enjoin the IRS from collecting the 100%

---

[7]26 U.S.C. § 7421(a) (The Anti-Injunction Act) provides that "no suit for the purpose of
restraining the assessment or collection of any tax shall be maintained in any court by any
person, whether or not such person is the person against whom such tax is assessed."  Similar to
the Tax Injunction Act, the purpose of the statute is to "protect the government's need to assess
and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial
interference." Bob Jones University v. Simon, 416 U.S. 725, 736 (1974).

penalty from the responsible officer of a debtor corporation.  Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a) (1988).  All encompassing as this statute seems to be, however, it does not provide specific authorization empowering a bankruptcy court to enjoin collection of the 100% penalty. On the other hand, the text of the Anti-Injunction Act is specific and unequivocal.  We hold that its proscription is not overridden by the general grant of authority provided in section 105(a) of the Bankruptcy Code.

895 F. 2d at 1279-1280.

Likewise, in A to Z Welding & Mfrg. Co. Inc. v. United States, 803 F.2d 932, 933 (8th Cir. 1986) the Court held that the Anti-Injunction Act barred an injunction against the IRS to prohibit it from collecting an assessment against principals of the debtor.[8]  In United States v. Huckabee Auto Co., et al (In re Huckabee Auto), 783 F.2d 1546, 1548 (11th Cir. 1989) the court affirmed the District Court's determination that the effort to enjoin the IRS from pursuing the principals was outside the scope of the bankruptcy court's jurisdiction.  The Eleventh Circuit did not even address the Anti-Injuction Act, it simply found that the bankruptcy court lacked jurisdiction over nondebtors.  Id. at 1549.

In this district, the District Court has held that a bankruptcy court lacks jurisdiction under the Anti-Injunction Act to enjoin collection of responsible officer taxes.  Matter of East Wind Industries, Inc., 61 B.R. 408, 411 (D.N.J. 1986).  Furthermore, the Court in McCrory Corp. v. Texas Comptroller of Public Accounts, et al. (In re McCrory Corp.) 212 B.R. 229, 232 (S.D.N.Y. 1997) found that a bankruptcy court's injunction prohibiting local taxing authorities from pursuing responsible person assessments was a violation of the Tax Injunction Act.  Notably, the Court relied upon cases that interpreted  the Anti-Injunction Act to bar bankruptcy courts from enjoining IRS

---

[8]Significantly, the Eighth Circuit distinguished its earlier decision in Bostwick v. United States, 521 F.2d 741 (8th Cir. 1975).

efforts to collect responsible party assessments, and found it significant that "these courts have so

held regardless of possible detrimental collateral effects on the company's bankruptcy process." Id.

at 232.

      In sum, although specific Bankruptcy Code provisions that affect state taxes prevail over the

Tax Injunction Act, use of Code § 105(a) to enjoin a state taxing authority from collecting a

responsible officer assessment from a nondebtor principal does not fall within the bankruptcy

exception to the Tax Injunction Act.  Further, the  fact that the injunction in the matter sub judice

arises from a release provision contained in a confirmed plan does not change the result.  Pazzo

cannot do indirectly what it cannot do directly.  The debtor in In re Condel, Inc., 91 B.R. 79, 82 (9th

Cir. B.A.P. 1988) argued that enforcement of an injunction contained in a plan is different from a

suit for injunctive or declaratory relief.  The B.A.P. Panel was not persuaded, stating that the

"Debtor will not be permitted to do indirectly what it cannot by law accomplish directly." Id.

      Pazzo's reliance on case authority that upholds plan provisions for releases and injunctions

in favor of non-debtor parties is misplaced.  None of the cases involved a challenge based on the Tax

Injunction Act, or for that matter, the Anti-Injunction Act.

      Finally, Pazzo misapprehends the purpose of this Court's citation to Hechinger and the cases

cited therein regarding waiver.  Hechinger very plainly illuminates the limits of the bankruptcy

exception to the Tax Injunction Act.  The debtor in that matter was specifically seeking declaratory

relief under Code § 505, and the Third Circuit found that the Tax Injunction Act did not bar the

bankruptcy court from determining whether the real estate transactions at issue were exempt from

state transfer and recording taxes.  335 F.3d at 246, n.1.  As the Court noted, the Tax Injunction Act

"does not prevent a Bankruptcy Court from enforcing the provisions of the Bankruptcy Code that

affect the collection of state taxes." Id.  Pazzo's analysis is not as finely tuned.  Pazzo cites no Code

section to ground its claimed injunction and simply makes the equitable argument that the Debtor's

reorganization is paramount.  Accordingly, <u>Hechinger</u> does not aid the Debtor.  Additionally, the purpose of the Court's reference to <u>Behe v. Chester Cty. Bd. of Assessment Appeals</u>, 952 F. 2d. 66, 68 (3d. Cir. 1995) and <u>Hardwick v. Cuomo</u>, 891 F.2d 1097, 1103-1104 (3d Cir. 1989) was to underline the point that the Division did not give a consensual release (by failing to object to the Release Provision) because it cannot waive the jurisdictional bar of the Tax Injunction Act.

## **CONCLUSION**

The motion for reconsideration must be denied because the Debtor simply reargues what it has already advocated.  Moreover, as a substantive matter, the Tax Injunction Act precluded the Division from consenting to the Release Provision in the Second Modified Plan and prohibited Pazzo from seeking further injunctive relief against the Division.